**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-13672

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

AMOS CHRISTOLIN,
   a.k.a. Patizan,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cr-00392-AT-JKL-2

————————————————

Before JORDAN, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

In August of 2017, Customs and Border Protection officers uncovered a drug smuggling operation involving the shipment of bricks of cocaine from Haiti to Miami, and then to Atlanta, in tubs

of butter. The officers suspected that Amos Christolin was involved in the scheme.

Upon his arrest for his participation in the scheme, Mr. Christolin was advised of his rights and interviewed by Special Agent Jacque Philippe from Homeland Security Investigations. Because Mr. Christolin's primary language is Haitian Creole, he was advised of his rights and interviewed in Haitian Creole. SA Philippe, who speaks Haitian Creole, acted as a translator.[1]

In challenging his subsequent convictions for federal narcotics offenses, Mr. Christolin makes several arguments. First, he asserts that he unequivocally invoked his right to remain silent during his interview with SA Philippe by saying, "No, I'm willing to listen," when asked if he wanted to speak with the agents. As a result, he says his subsequent incriminating statements should have been suppressed. Second, he contends that his waiver of rights was not knowing and voluntary due to SA Philippe's limited fluency in Haitian Creole. Third, he maintains that the introduction of his statements from his interview with SA Philippe violated the Confrontation Clause because they were introduced by a different law enforcement agent at trial.

---

[1] SA Philippe's level of proficiency in Haitian Creole has been the source of contention between the parties throughout this case. SA Philippe's translations of Mr. Christolin's rights and Mr. Christolin's statements were contested at a suppression hearing and now again here on appeal.

## I

During a random search of cargo arriving in Miami from Haiti in August of 2017, CBP officers uncovered tubs of butter that contained bricks of cocaine. The officers recovered 28 kilograms of cocaine, and reached out to contacts at HSI to relay what they had found and to hand off the investigation.

## A

HSI agents took over the investigation and conducted a controlled delivery to Vital Joseph using some of the seized cocaine. As part of the scheme, Mr. Joseph would use his connections in Haiti to import cocaine into the United States through Miami using tubs of butter to conceal the drugs as they passed through customs. Mr. Joseph would deliver the shipments to other coconspirators who would then deliver them to their ultimate destination for distribution. HSI arrested Mr. Joseph following the controlled delivery.

The agents seized a cellphone from Mr. Joseph and another from his bedroom. The agents had Mr. Joseph make a call with one of these phones to his contact in Haiti to discuss their recent shipment of cocaine. During that call, Mr. Joseph confirmed the 28-kilogram quantity using coded language.

Following the call, Mr. Joseph received a message from his Haitian contact that listed three names and associated phone numbers, including "Patizan," who had the phone number (786) 203-

2316. Each name in the message was accompanied by a number, the total of which added up to 28.[2]

The agents understood the message to be instructions for the drivers who would pick up the drugs, as well as the amount of cocaine that each driver was to receive. Using immigration paperwork, DMV records, AT&T subscriber data, and other investigatory techniques, HSI was able to trace the 2316 phone number to Mr. Christolin.

In November of 2018, HSI agents arrested Mr. Christolin at his home for his role in the drug-trafficking operation. SA Philippe conducted the interview in Haitian Creole as the only agent proficient in the language on the scene.

SA Philippe is a "heritage learner" of Haitian Creole, having been born in the United States to parents from Haiti and having grown up speaking Haitian Creole as a first language. SA Philippe tested his proficiency in Haitian Creole while employed by HSI and received a score of "3." It is not clear what the maximum score on the exam is and where on the range SA Philippe falls, but a score of "2" is passing. SA Philippe's score qualified him to receive additional compensation from HSI. He estimated that he has served as

---

[2] Mr. Joseph testified at Mr. Christolin's trial and confirmed that the coded language in the message was in reference to the 28 kilograms of cocaine, that Mr. Christolin was "Patizan," and that he had delivered multiple shipments of cocaine to Mr. Christolin.

a translator in about 50 interviews as an agent for HSI and has advised suspects of their rights in Haitian Creole between 20 to 30 times.

**B**

SA Philippe used a Haitian Creole statement of rights form, which translates the *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966), into Haitian Creole. SA Philippe had Mr. Christolin initial after each of the lines explaining his rights to indicate that he understood them.

While reading from the form, SA Philippe said the following in Haitian Creole: "Before I interview you, it's my duty to inform you of your rights. Do you understand what I just read?" Mr. Christolin responded, "Yes." SA Philippe then asked Mr. Christolin whether he could read. Mr. Christolin responded that he could and then read the first line of the form out loud in Haitian Creole. SA Philippe again confirmed that Mr. Christolin understood that line and directed him to initial the line to memorialize that he understood it. Mr. Christolin did so.

SA Philippe then read the next line on the form in Haitian Creole, which said: "You have the right to remain silent and decline from making any statement." SA Philippe asked Mr. Christolin if he understood, to which Mr. Christolin responded, "Yeah."

SA Philippe continued with the next right: "Any statement you made can be used against you in Courts or any legal institution." SA Philippe then paused and told Mr. Christolin, "My—Creole is not very strong," and asked Mr. Christolin to read the line

himself. Mr. Christolin read out loud, "Any statement you made can be used against you in Courts or in any legal institution." SA Philippe asked Mr. Christolin if he understood, and Mr. Christolin responded, "I don't fully understand this. So, you can, you can use any statement . . ." At this point, SA Philippe paused the interview and obtained an English language version of the advice of rights form as an aid for himself, and told Mr. Christolin in Haitian Creole, "this just said . . . everything you tell us . . . we can use in Courts, when we—are in Courts or when we're in front of a Judge." Mr. Christolin responded "OK."

SA Philippe proceeded to the next line: "[Y]ou have the right to an attorney before you make any statements and before you answer any questions they may ask you when they are interviewing you." Pausing again, he corrected himself and said "—interrogating you. Do you understand?" Mr. Christolin responded, "Yeah."

Then SA Philippe explained: "You have the right to an attorney . . . a Federal Commissioner, or a US Court may provide you with one, if you cannot afford one yourself. . . . if you cannot afford an attorney, . . . one will be provided to you, if you want." Mr. Christolin once again confirmed that he understood. SA Philippe advised Mr. Christolin, in Haitian Creole, "[i]f you're willing to immediately answer all the questions you are asked . . . without an attorney present with you, you can, at any time request the interview is stopped and consult an attorney. This is your right. Do you understand what that says?" Mr. Christolin responded, "Yeah." SA Philippe then paraphrased, "So, when we are talking to you, at any

times, you can tell, um, you want an attorney, and then we will stop talking to you." Mr. Christolin responded, "OK."

Moving on, SA Philippe then said: "You also have the right to waive the assistance of an attorney, and also the right to remain silent. Also, if you are willing, you may make all your statement without consulting an attorney. Just say whether you understand?" Mr. Christolin responded, "No, do I put initial?" SA Philippe replied, "No, you will initial here to state if you understand." Mr. Christolin responded, "Uh, OK," and initialed the form.

Finally, SA Philippe concluded with the following exchange with Mr. Christolin. "Now, I will ask you if you wish to speak with us. We'll explain to you what's going on. You can give us, give, give us back your response." Mr. Christolin responded, "All right!" SA Philippe asked, "So, are you willing to speak with us?" And Mr. Christolin responded "No, I'm willing to listen!" SA Philippe again clarified, "No, I am asking if you want to speak with us. You will need to sign—if you're willing to speak with us, you will sign here, to state that you are willing to speak with us. Um, and then, I will sign, um, another person will sign. And then, like I said, you can begin speaking with us, anytime you can stop speaking with us, if you want to." Mr. Christolin then said, "Yeah. OK." Clarifying one last time, SA Philippe asked "So, are you willing to speak with us?" Mr. Christolin replied, "Yeah."

Mr. Christolin then spoke with SA Philippe and other HSI agents and made several statements, some of which the government used at trial. During the interview, Mr. Christolin admitted

to using the alias "Patizan," admitted that the 2316 phone number was his, and that he met someone who met the description of another individual who transported drugs to the Atlanta area.

## C

Before trial, Mr. Christolin moved to exclude these statements. A magistrate judge held an evidentiary hearing and issued a report and recommendation. The magistrate judge determined that Mr. Christolin's waiver of rights was uncoerced, knowing, and intelligent. The magistrate judge also found that Mr. Christolin did not unequivocally invoke his right to remain silent. With respect to Mr. Christolin's understanding of SA Philippe's Haitian Creole, the magistrate judge found that "[i]t is also clear from the interview itself that Mr. Christolin understood what SA Philippe was saying." D.E. 165 at 28 n.17. The transcript of the interview, moreover, "show[ed] Mr. Christolin repeatedly conversing with the agents in English without translation." *Id.* at 22.

The district court adopted the report and recommendation but noted the case presented a closer question than the one addressed in *United States v. Youte*, 769 F. App'x 685 (11th Cir. 2019), which also involved SA Philippe's Haitian Creole translations of *Miranda* rights. The court was perturbed by the "more troubling course of interrogation than occurred in *Youte*" because Mr. Christolin had "affirmatively asserted his intent not to speak – and only to listen to what the officers had to say." D.E. 189 at 8. The court ultimately concluded, however, that it could not say that Mr. Christolin unequivocally communicated his refusal to agree to speak

with the agents or to proceed with the interview based on the record. *See id.* at 8–9.

Before trial, Mr. Christolin again sought to exclude SA Philippe's translations of his statements, which the government sought to introduce at trial. Mr. Christolin argued in his motion *in limine* that SA Philippe's repetition of his statements while translating were "not verbatim and commutative." D.E. 205 at 2. When paired with the certified translation, Mr. Christolin argued that SA Philippe's translations were "[a]t best . . . duplicative" and could "potentially create confusion for jurors." *Id*.

The government opposed Mr. Christolin's motion and responded that carving out SA Philippe's translations would create confusion by removing key context from the interview. The government asked the district court to allow SA Philippe's translations but with a limiting instruction stating, "to the extent that these statements differ from the translations next to each Haitian Creole statement, [the jurors] should rely on the latter." D.E. 284 at 732–33.

While discussing the matter with the parties, the district court raised a separate potential Confrontation Clause issue. The district court referred the parties to § 341 of Don Samuel's Eleventh Circuit Criminal Handbook. *See* D.E. 283 at 101. This portion of the Handbook reads, in relevant part, as follows:

> In 2013, the Eleventh Circuit considered a case in which the defendant was stopped at the border and interviewed by a Customs and Border Patrol agent.

10                    Opinion of the Court                23-13672

> Because the defendant did not speak English, an inter-
> preter was used. At trial, the CBP agent testified
> about what the interpreter said. The Eleventh Circuit
> held that this violated the Confrontation
> Clause. *United States v. Charles*, 722 F.3d 1319 (11th
> Cir. 2013) . . . Problems under the Confrontation
> Clause may arise when a translated transcript is pre-
> sented to the jury. The translator's implicit statement
> that the translation is an accurate translation of the
> participants' recorded statements would qualify as
> "testimonial" under *Crawford v. Washington*, 541 U.S.
> 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). If another
> witness testified, however, such as the case agent,
> that the translation is accurate, this would be the only
> testimony heard by the jury and would alleviate any
> Confrontation concerns. *United States v. Curbelo*, 726
> F.3d 1260 (11th Cir. 2013).

1 Don Samuel, Eleventh Circuit Criminal Handbook § 341 (2025).

Mr. Christolin then reiterated the arguments in his motion *in limine*—i.e., that the certified translations next to SA Philippe's translations were repetitive or cumulative. *See* D.E. 283 at 102. The government repeated its preference for a curative instruction because the interview would be turned into "Swiss cheese" without SA Philippe's own questions and statements as context. *See id.* at 104.

The district court concluded the discussion by saying that it considered the issue to be preserved but wanted to see if the certified translator would testify "to address any Confrontation Clause

issue" or if the parties were "waiving having her here." *Id.* at 105. The government responded that there was a stipulation concerning the certified transcript and that transcripts such as these were "admitted all the time." *Id.* After some more discussion, the court ultimately adopted the government's proposed solution of allowing the jury to see SA Philippe's translations with a limiting instruction that the certified translation was to be relied on in case of a conflict between the two.

The jury found Mr. Christolin guilty of conspiracy to distribute a controlled substance involving at least five kilograms or more of a mixture and substance containing a detectable amount of cocaine. *See* D.E. 219. The district court sentenced him to 120 months' imprisonment. *See* D.E. 268.

## II

"The denial of a motion to suppress is reviewed under a mixed standard. We review the district court's findings of fact for clear error and the application of law to those facts *de novo*." *United States v. Ford*, 784 F.3d 1386, 1391 (11th Cir. 2015).

Violations of the Confrontation Clause typically warrant *de novo* review. *See United States v. Gari*, 572 F.3d 1352, 1361 (11th Cir. 2009). But if no Confrontation Clause objection is lodged in the district court, we review only for plain error. *See United States v. Jiminez*, 564 F.3d 1280, 1286 (11th Cir. 2009).

### III

Mr. Christolin argues that he unequivocally invoked his right to remain silent when he said, "No, I'm willing to listen," when the agents asked if he would speak with them. In his view, the interview should have ceased at that point and without any further questioning by the agents. He also maintains that his waiver was not knowing and voluntary. We disagree on both points.

### A

The Supreme Court's decision in *Miranda*, 384 U.S. at 444, requires that an individual undergoing an in-custody interrogation be warned that he has the right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. But law enforcement officers have no duty to stop their questioning if the subject's invocation of Fifth Amendment rights is ambiguous or equivocal. *See Davis v. United States*, 512 U.S. 452, 461 (1994). "A suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent." *Coleman v. Singletary*, 30 F.3d 1420, 1424 (11th Cir. 1994).

To expressly invoke the Fifth Amendment's protections, a person must clearly assert that he wants to remain silent or that he does not want to talk with the police. *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) ("Had he made either of these simple, unambiguous statements, he would have invoked his right to cut off

questioning. . . . Here he did neither, so he did not invoke his right to remain silent."). We have declined to establish a *per se* rule that a suspect's use of "No," when asked if he wants to talk to a police officer, means that the officer cannot go forward with questioning. *See Medina v. Singletary*, 59 F.3d 1095, 1104–05 (11th Cir. 1995). We have also held that saying, "No, I'm not going to waive my rights," is insufficient to invoke the Fifth Amendment's protections when other ambiguous statements follow. *See United States v. Acosta*, 363 F.3d 1141, 1154 (11th Cir. 2004).

Mr. Christolin's invocation was not unequivocal or unambiguous. Mr. Christolin was read his rights from an advice of rights form, and indicated that he understood his rights along the way by placing his initials next to each right as they were read to him. After being advised of his rights, when he was asked if he wanted to speak with the agents, he said "No, I'm willing to listen." This response did not make it clear if Mr. Christolin wished to remain silent; he may have wanted to hear what the agents had to say before he made up his mind or started answering their questions. *See Acosta*, 363 F.3d at 1155 ("[T]wo reasonable, competing interpretations is the very definition of ambiguity.") (citation omitted).

The Ninth Circuit's decision in *United States v. Washington*, 462 F.3d 1124 (9th Cir. 2006), is instructive. In *Washington*, the subject was read his *Miranda* rights, just as Mr. Christolin was. He was then asked if he wished to speak to the agents, just as Mr. Christolin was, and replied, "I agree to listen." The Ninth Circuit held that this statement "cannot possibly be construed as a request for the

FBI agents not to speak to him or for him to remain silent" and that "[h]e simply did not invoke his right to remain silent." *Id.* at 1134.

We conclude that there is no legal daylight between "No, I'm willing to listen" and "I agree to listen." Addition or subtraction of "No" does not change the import of the sentence in any meaningful way. Moreover, we agree with the Ninth Circuit that such a statement is not an unequivocal or unambiguous invocation of the Fifth Amendment's protections. And we have long said that agents in this context have a right to clarify the interviewee's wishes by asking follow-up questions. *See Nash v. Estelle*, 597 F.2d 513, 517 (5th Cir. 1979).

**B**

Mr. Christolin also argues that his waiver of rights was not knowing and voluntary due to SA Phillipe's limited Haitian Creole abilities. *Miranda* allows a suspect to waive his rights after being advised of them. *See* 384 U.S. at 444. But that waiver must be voluntary, knowing, and intelligent. *See id.* The inquiry for determining if a waiver is voluntary, knowing, and intelligent is twofold. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986).

First, the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* We consider the totality of the circumstances as part of this inquiry including lack of education, or his low intelligence, the lack of any advice to the subject of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such

as the deprivation of food or sleep. *See United States v. Bernal-Benitez*, 594 F.3d 1303, 1319 (11th Cir. 2010).

Second, the waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Burbine*, 475 U.S. at 421. "Even if a defendant's statement is voluntary and not coerced, the prosecution must make the additional showing that the accused understood these [*Miranda*] rights." *Hall v. Thomas*, 611 F.3d 1259, 1285 (11th Cir. 2010) (citation omitted) (alterations in original). "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." *Burbine*, 475 U.S. at 421. (internal quotation marks and citations omitted).

Mr. Christolin's waiver was voluntary. Although Mr. Christolin argues that SA Philippe pushed him to speak by using language that was more of a command than a question, the record does not support that contention. As the district court noted, "[w]hen [Mr.] Christolin agreed to sign the waiver form and proceed to the substantive interview, neither the audio recording nor the transcript reflect a threatening tonality or verbiage on the part of the officers." D.E. 189 at 9. That finding is plausible, and therefore not clearly erroneous. *See Cooper v. Harris*, 581 U.S. 285, 293 (2017).

The transcript supports the district court's finding that SA Philippe was not pressuring Mr. Christolin but instead clarifying

that he would need to sign the form if he wanted to speak to the agents. SA Philipe even reiterated that the interview would stop at any time Mr. Christolin chose. Absent any physical or psychological pressure or some other indicia of overreach to elicit the statements, we are satisfied about the voluntariness of Mr. Christolin's statements. *See Burbine*, 475 U.S. 412 at 421. *See also Colorado v. Connelly*, 479 U.S. 157, 170 (1986) ("The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion. . . . The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching[.]").

Mr. Christolin next argues that his waiver of rights was not knowing due to SA Philippe's lack of mastery of Haitian Creole. The Fifth Amendment, however, only requires that a suspect comprehend "the full panoply of rights set out in the *Miranda* warnings and of the potential consequences of a decision to relinquish them." *Burbine*, 475 U.S. at 422. "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the [government's] intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Id.* at 422–23. As we held in *Youte*, SA Philippe's translations to Mr. Christolin, although maybe inelegant, were constitutionally sufficient because they reasonably conveyed the relevant rights. *See Youte*, 769 F. App'x at 687–688. And

because Mr. Christolin repeatedly told the interviewers that he understood his rights, we conclude that his waiver was knowing.[3]

Mr. Christolin further asserts that he did not knowingly waive his rights. It is true that he expressed confusion about his rights when he said, "I don't fully understand this. So, you can, you can use any statement . . ." But SA Philippe cured that confusion by going over his rights with him again using an English advice of rights form, which SA Philippe used as a translation aid for himself, so that he could translate the rights from English to Haitian Creole. After doing so, Mr. Christolin initialed that he understood.

Mr. Christolin maintains that SA Philippe's explanation was deficient because SA Philippe used some English words in his translation rather than Haitian Creole. Mr. Christolin points out that SA Philippe did not translate the word "used" (in "[a]ny statement you made can be used against you in Courts or any legal institution") into Haitian Creole. This, Mr. Christolin says, rendered the *Miranda* warnings deficient because he did not know what "used" meant. We are not persuaded. Elsewhere in the interview, when SA Philippe or other agents said the word "used" in English as opposed to Haitian Creole, Mr. Christolin had no trouble understanding. For example:

SA Devane: Who uses this phone?

Mr. Christolin: Me.

---

[3] A chart that contains the full translation of Mr. Christolin's interview by SA Philippe, side-by-side with the certified translation is appended to this opinion.

SA Ramirez: Anybody else? Other people?

SA Devane: Anyone but you? Can you—ask him that in Creole?

SA Philippe: Who else uses this phone?

Mr. Christolin: Just me.

App. D.E. 44 at 105.

## C

Finally, Mr. Christolin argues that introduction of SA Philippe's translations violated the Confrontation Clause because SA Philippe did not testify at trial. But before we decide this question, we must determine if this argument was properly preserved for appeal.

Mr. Christolin did not mention the Confrontation Clause in his motion *in limine* or at the hearing on the motion. But he makes two arguments in support of his contention that the Confrontation Clause argument was preserved. First, he says that under Federal Rule of Criminal Procedure 51, he preserved the Confrontation Clause issue for appeal by asking for relief in the form of having SA Philippe's statements redacted. Mr. Christolin cites *Holguin-Hernandez v. United States*, 589 U.S. 169 (2020), for this proposition. Second, Mr. Christolin claims that during trial the district court considered the Confrontation Clause issue with respect to SA Philippe's translations such that it was properly preserved. *See* D.E. 283 at 101.

First, Mr. Christolin overreads *Holguin-Hernandez*. In that case, the defendant argued in the district court that he should receive either no additional prison time for a violation of supervised release or that any sentence should be less than 12 months long. After receiving a sentence of 12 months, he appealed on the ground that his sentence was unreasonable. The question before the Supreme Court was whether the defendant's argument for a sentence of less than 12 months preserved his claim that the 12-month sentence was unreasonably long. *See Holguin-Hernandez*, 589 U.S. at 764.

The Fifth Circuit in *Holguin-Hernandez* held that the defendant had forfeited his argument by failing to object in the district court to the reasonableness of the sentence imposed. *See United States v. Holguin-Hernandez*, 746 F. App'x 403 (5th Cir. 2018), *vacated and remanded*, 589 U.S. 169 (2020). The Supreme Court reversed, and clarified that Federal Rule of Criminal Procedure 51 provides two ways to preserve an argument: (1) by informing the court of the action the party wishes the court to take; or (2) by objecting to the court's action and informing the court of the grounds for that objection. *See Holguin-Hernandez*, 589 U.S. at 171. Issues not brought under one of these two bases are subject to review only for plain error. *See id.*

Mr. Christolin told the district court of the action that he wanted it to take—redacting SA Philippe's translations. This request for redcation did not preserve a Confrontation Clause argument. A request for redactions on the ground that the translations

were repetitive and duplicative under Federal Rule of Evidence 403, *see* D.E. 205 at 2, is not an assertion of a Confrontation Clause violation.

Mr. Christolin argues that the Confrontation Clause issue was preserved because the district court raised it *sua sponte*. He says that the discussion involving the Eleventh Circuit Criminal Handbook and the court's reference to a potential Confrontation Clause issue was about SA Philippe's translations coming into evidence without him taking the stand. We read the record differently.

The portion of the Handbook cited by the district court, concerned an interpreter's certified translation coming into evidence without the translator testifying to its accuracy, and how that scenario could result in a Confrontation Clause violation. *See* 1 Eleventh Circuit Criminal Handbook § 341 (citing *United States v. Charles*, 722 F.3d 1319 (11th Cir. 2013) (holding that an interpreter's statements of what a defendant said were testimonial and that the defendant had a Sixth Amendment right to cross examine the interpreter)).

Here, the accuracy of the certified transcript prepared by the interpreter was stipulated to, so any Confrontation Clause issue with respect to the certified translation was waived by that stipulation. *See United States v. Stephens*, 609 F.2d 230, 232 (5th Cir. 1980) ("[C]ounsel in a criminal case may waive his client's Sixth Amendment right of confrontation by stipulating to the admission of evidence[.]"). Moreover, Mr. Christolin's counsel made clear that his concern was not the Confrontation Clause; he was concerned with

23-13672              Opinion of the Court              21

the dual translations from both the certified interpreter and SA Philippe as being confusing, inconsistent, or duplicative. *See* D.E. 283 at 103. And, as noted, Mr. Christolin did not object to SA Philippe's translations in his motion *in limine* on Confrontation Clause grounds. *See* D.E. 205 at 2. Accordingly, our review is for plain error.[4]

Under plain error, Mr. Christolin must show that there was error, that the error was plain, and the error affected his substantial rights. *See* Fed. R. Crim. P. 52(b); *United States v. Davila*, 569 U.S. 597, 607 (2013). If he makes that showing, we may correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (citations omitted) (alterations in original).

The transcript containing the dual translations of both SA Philippe and the certified interpreter were shown to the jury. The transcript was not admitted into evidence, but was testified to by a different agent than SA Philippe and the certified translation of the interview was stipulated to. SA Philippe's translation was allowed

---

[4] Mr. Christolin argues that our decisions in *United States v. Touray*, 151 F.4th 1317 (11th Cir. 2025), and *United States v. Horn*, 129 F.4th 1275 (11th Cir. 2025) compel a different result because "the defense requested that the district court prevent the jury from hearing Agent Phillipe's interpretation of Mr. Christolin's statement." App. D.E. 64 at 2. But, as discussed earlier, Mr. Christolin did not object on Confrontation Clause grounds and the district court did not understand his objection as such. Rather, the objection was about the translations being confusing or inconsistent. *See* D.E. 205 at 1-2. *Touray* and *Horn* therefore do not change our conclusion.

22                    Opinion of the Court                    23-13672

to remain in the transcript unredacted because the district court gave the following limiting instruction to the jury:

> Now, let me give you an additional instruction. So you may notice that some of Special Agent Phillipe's contemporaneous remarks differ from the translations next to each Haitian Creole statement. Some of Special Agent Phillipe's remarks are his efforts to explain to his colleagues his own personal [sense] of what Mr. Christolin is saying; therefore, Special Agent Phillipe's words are not necessarily an actual verbatim translation and cannot be relied upon as such.

D.E. 284 at 732–33.

This instruction, in our view, may have failed to properly limit the scope of SA Philippe's translations for purposes other than the truth of the matter asserted. In other words, the instruction did not tell the jury that SA Philippe's own statements about what Mr. Christolin said or meant could not be admitted for their truth due to hearsay problems because SA Philippe did not testify.

A translation of a defendant's statement is testimonial. So, without testimony from the declarant, the translation is an out-of-court statement and cannot be offered for the truth of the matter asserted. *See Charles*, 722 F.3d at 1323–24. But Mr. Christolin never raised any hearsay objection. Nor did he object to the limiting instruction. *See* D.E. 284 at 11.

Even if there was error of some kind, and even if the error was plain, it did not substantially affect Mr. Christolin's rights. "The admission of hearsay alone does not mandate a reversal of conviction: '[t]o require a new trial . . . [a] significant possibility must exist that, considering the other evidence presented by both the prosecution and the defense, the . . . statement had a substantial impact upon the verdict of the jury.'" *United States v. Docampo*, 573 F.3d 1091, 1097 (11th Cir. 2009) (alterations in original).

As noted above, SA Philippe's translations and the certified translation were not materially different such that they prejudiced Mr. Christolin. And Mr. Christolin does not point to any of SA Philippe's translations that were so markedly dissimilar that they unfairly prejudiced him. We therefore conclude that Mr. Christolin's rights were not substantially affected by SA Philippe's translations being presented to the jury.

## IV

The district court did not err in denying Mr. Christolin's motion to suppress, and the admission of SA Philippe's translations did not constitute plain error under the Confrontation Clause. We therefore affirm Mr. Christolin's convictions.

**AFFIRMED.**

24                    Opinion of the Court                    23-13672

**APPENDIX**

| Participant | Transcript | Certified Translation | SA Philippe Translation |
|---|---|---|---|
| SA Devane | Who uses this phone? | | |
| Christolin | Me. | | |
| SA Ramirez | Anybody else? Other people? | | |
| SA Devane | Anyone but you? Can you—ask him that in Creole? | | |
| SA Philippe | Ki lòt moun ki use telefòn sa? | Who else uses this phone? | |
| Christolin | Sèl mwen menm. | Just me | |
| SA Philippe | The Samsung phone? | | |
| SA Devane | This is the Samsung the… | | |
| Christolin | Sèl mwen menm. | Just me. | He says just him |
| SA Devane | Would anyone else ever call this phone and ask for someone other than you? | | |
| SA Philippe | Eske moun konn rele telefòn sa pou mande pou uh, lòt moun? | Do people call this phone to ask for, uh, other people? | |
| Christolin | Pou lòt moun? | For other people? | |

23-13672                Opinion of the Court                25

| SA Philippe | Yeah | | |
|---|---|---|---|
| Christolin | Non. Men te-lefòn mwen, se sèl pou mwen yo ka rele mande pou mwen. | No. But, the phone is mine. I'm the only one they can call and ask for. | He said it's his phone. He's the only person they can call and ask for. |

Cherubin Translation: Pg. 24-25.

26                       Opinion of the Court                       23-13672

| Participant | Transcript | Certified Translation | SA Philippe Translation |
|---|---|---|---|
| SA Devane | So, people call you Patizan? | | |
| Christolin | Ya. | | |
| SA Ramirez | Who calls you that? | | |
| SA Philippe | Ki moun ki rele w, um, ki moun ki rele w Patizan? | Who calls you, um, who calls you Patizan? | |
| Christolin | Bon, [U/I] gen, gen plizyè moun. | Well, [U/I] there are, there are several people | He said a lot of people call him Patizan. What does that mean Patizan? |
| Christolin | No, se kòmsi m bezwen rele w— se just yon non yo ban mwen. M pa vle rele Amos ou byen m pa vle rele w, just Patizan. | No, it's like I want to call you— it's just a name they gave me. I don't want to call Amos or I don't want to call you, just Patizan. | He said the name Patizan is just a nickname they call him |

Cherubin Translation: Pg. 31-32.

23-13672                    Opinion of the Court                    27

| Participant | Transcript | Certified Translation | SA Philippe Translation |
|---|---|---|---|
| Christolin | Ya. Ou ka just rele m ou just di m al pran yon bagay nan men yon moun pou w, m just al pran l. Moun lan ka di m se just tèl bagay, si moun lan pa vle m konnen. Se jus mwen menm pa ensten, m gen dwa… | Ya. You could just call me, you just ask me to get something from someone for you, I just go and get it. The person might tell it's just something, if they don't want me know. It's just me by instinct, I could… | He said—he said he could go pick up the per—pick up something from somebody, if they tell him it's something, he won't know. |
| Christolin | But, si m pa konnen ou nan anyen wrong, si m konnen something wrong about you, m ap ekzèse… Se poutèt sa frè m la, li te just konn di, li te just di m sa, al pran bagay la, m di OK, next time, paske m pa vle, m sot Ayiti, yo just pran telefòn mwen, m pa | But, if I don't know you're in anything wrong; if I know something wrong about you, I will exercise… That's why my brother who just would tell, he just told me go get the stuff, I said OK, next time, because I do not want, I got back from Haiti, they took my phone. I do not want to speak, I don't | He said after—he told his brother he went from Haiti—he went to Haiti, when he came back they took his phone—[Voices overlap] . . . Uh, he went to Haiti, they took his phone, he told his brother, he's not gonna, uh, meet with anybody else |

28                          Opinion of the Court                          23-13672

|  | vle pale, m pa bezwen, al rankontre ak okenn moun mwen pa konnen. | need, don't want to meet anyone that I don't know. |  |
|---|---|---|---|
| Christolin | M pa vle pale ak okenn moun m pa konnen. | I don't want to talk to anyone that I don't know. | He's not gonna talk to anybody he doesn't know on the phone. [voice overlap]. |
| Christolin | M pa vle pale ak okenn ke moun mwen pa konnen! M te jis di l sa. | I do not want to speak to no one that I don't know! I just told him that |  |
| SA Philippe | So, ou di frè w sa-- | So, you told your brother that-- |  |
| SA Devane | Let's dig into that then. |  |  |
| SA Philippe | --then, ou konnen sa frè w t ap fè w fè? | --then, you knew what your brother was making you do? |  |
| SA Devane | Mh! |  |  |
| Christolin | Noon, tande! M just pa konnen. Paske m just konnen… Lè m vini m ap di ti sè m sa. M di "Mirlène, ou konnen m sot Ayiti, yo pran telefòn mwen, just I don't | Nooo, listen! I just don't know. Because I just know… When I came I was telling my sister. I said "Mirlène, you know when I came from Haiti, they took my phone, just I don't |  |

|  |  |  |  |
|---|---|---|---|
|  | know. M pa konnen si se lè m t ap pale ak David, kèk bagay. M pa konnen! Just sa m pwal di David, next time, pa pale avè m de okenn ke moun m pa konnen | know. I don't know if it was when I was speaking with David, some stuff. I don't know! Just what I will let David know, next time, do not tell me about anyone that I don't know. |  |
| Christolin | Because m pa vle pale ak okenn moun ke m pa konnen. Se sak fè m di misye depi m vin isi, m ap travay. M pa pè leve bonè m al travay. M pa bezwen konn anyen. But, si m al pran, si ou voye m yon kote, m konn moun lan, wi. Men, si m pa konnen moun lan, m pa pale ak moun m pa konnen ankò. | Because I don't want to speak with anyone that I don't know. That's why I told the guy since I came here, I've been working. I'm not afraid to get up early to go work. I don't want to know anything. But, if I go get, if you send me somewhere, I know the person, yes. But, if I don't know the person, I'm not talking to people I don't know anymore. | He was explaining to his sister…He said if he sent him to go to somebody, uh, he knows the person he's gonna go but if he doesn't know the person, he's not gonna do it anymore. |

Cherubin Translation: Pg. 91-94.

| Participant | Transcript | Certified Translation | SA Philippe Translation |
|---|---|---|---|
| Christolin | M konn al pran bagay nan men moun, m pa ka di w m pa al pran. Men, si m di w m konn just…[U/I]. | I'm used to pick up things from people. I cannot say I don't. But, if I tell you I'm used just… [U/I]. | |
| SA Philippe | Konbyen fwa, konbyen fwa w al chache yon bag nan men moun? Konbyen fwa w al chache… | How many times, how many times you went to pick up a bag from someone? How many times you pick up… | |
| Christolin | But, ou wè lè Matt [U/I] Edison, m sonje m t al pran yon bagay nan men yon moun nan Edison | But, you see when Matt [U/I] Edison, I remember I picked up a bag from someone in Edison. | |
| SA Philippe | He said—he said… Tann mwen yon moman! | He said—he said… Wait just one second! | |
| Christolin | Nan yon bag, yo te dim se te yon kado. | In a bag, I was told it's a gift. | He said he remembered when you brought up Edison he picked up something from somebody at Edison, um, it |

| | | | was in a bag in-side a [U/I]? |
|---|---|---|---|
| Christolin | Te di m sa se yon kado pou m bay yon mennaj li. | I was told to take the gift to his girlfriend | He—he said the person told him—[Voices overlap] |
| Christolin | [U/I] But, m te wè papye kado ladan, nan yon bag [U/I]. | [U/I] But, I saw gift wrap inside the bag [U/I]. | |

Cherubin Translation: Pg. 105.

32                    Opinion of the Court                    23-13672

| Participant | Transcript | Certified Translation | SA Philippe Translation |
|---|---|---|---|
| SA Philippe | Moun lan pat louvri, moun lan pat montre w sa ki nan bag la? | The person did not open, the person did not show you what was inside the bag? | |
| Christolin | Non | No | |
| SA Philippe | So, nou pa gen… So, si m montre w …? | So, we don't have… So, if I show you…? | |
| Christolin | Si moun lan jès ban mwen l… Si ou montre m foto moun lan, m pap sonje l. | If the person just gave me the bag… If you show me the person's picture, I won't remember | |
| SA Philippe | No, no. Moun lan just ba w bag la and, ou jis pran bag la, w ale? | No, no. The person just gave you the bag and you just took the bag, and left? | |
| Christolin | M jis al pote l bay moun lan? Paske… | I just took it to the person? Because… | |
| SA Philippe | Ki, ki moun ou pote l bay? | Who, who did you take it? | |
| Christolin | M te pote l bay yon dam! | I took it to a lady! | |
| Christolin | Dam lan jwenn avè m li jwenn avèm nan… [baye] | The lady met me, she met me… [yawning]. | He said—--he brought the bag to a lady… |
| Christolin | OK. [U/I] ap desann. M jwenn ak | OK. [U/I] heading down. I caught up with | |

|  |  |  |  |
|---|---|---|---|
|  | moun lan la, dam la nan [klake dwèt]-- | the person, the lady [Finger snapping]-- |  |
| SA Ramirez | What did he see? Did he look at it? |  |  |
| Christolin | --nan West Dixie an ki san onz lan. [U/I] m just bay [U/I] [Vwa monte youn sou lòt] | --in West Dixie, on eleventh. [U/I] I just gave [U/I] [Voice overlap] | He said he met up with a lady at the West Dixie on 111th Street, on 11th Avenue. On Eleventh Street, Seventh Avenue, he met up with a lady at a Win Dixie and gave her the bag |

Cherubin Translation: Pg. 110-111.

| Participant | Transcript | Certified Translation | SA Philippe Translation |
|---|---|---|---|
| Christolin | M just pa—paske li gen yon pakèt [Bege] flyer, blad ladan, ak tout papye kado ladan | I just did not—because it had a bunch of [Stutters] flyers, balloons inside with gift wraps inside. | He said it was [U/I] paper |
| Christolin | M pa ouvri l. M pa pèsiste konnen sa ki ladan | I did not open it. I did not insist on finding out what was inside. | |
| SA Philippe | Kouman ou wè l te gen papye kado ladan si ou pa louvri l? | How did you see there were gift wraps inside if you didn't open it? | |
| Christolin | Paske li pat zipe! | Because it wasn't zipped! | He said the bag wasn't zipped and he saw… |
| Christolin | Li pat zipe. [U/I] Ou wè… Ou jis… Ou, ou konn wè gwo bag [Bege] yo konn pot kado yo? | It wasn't zipped. [U/I] You see… You just… Have you seen the really huge bag [Stutters] used to put gifts in? | He saw wrapping paper in the bag, the bag wasn't zipped, he saw wrapping paper in the bag. |
| SA Philippe | M konn sa w ap di a. | I see what you're talking about | |
| Christolin | That's it! | | |
| SA Philippe | So, ou wè papye kado? | So, you saw wrapping paper? | |
| Christolin | Yeah | | |

23-13672              Opinion of the Court                 35

| SA Devane | Wrapping paper in… like tissue paper? | | |
|---|---|---|---|
| SA Philippe | Ki kalite? | What type? | |
| SA Ramirez | Or like a tube? | | |
| Christolin | Te gen tout koulè. Te gen wòz, vè, but it's a bag, for, the big bag for the, for the gift. Ou konn— | They were in all colors. They had pink, green, but it's a bag, for the big bag, for the gift. You know— | |
| SA Philippe | A duffle bag— | | |
| Christolin | --ou konn bag kado yo? | --you know the gift bags? | |
| SA Philippe | A duffle bag. | | |
| Christolin | Yeah | | |
| SA Philippe | A duffle bag | | |
| Christolin | But, ou konnen lè ou fin mete l anndan, ou [U/I] m jis wè yon pakèt papye | But, you know after you're done putting it in, I just see[U/I] a bunch of paper. | Oh, [U/I] he says [Stutters] when you go to like a party and then you kinda put… |

Cherubin Translation: Pg. 112-113.

| Participant | Transcript | Certified Translation | SA Philippe Translation |
|---|---|---|---|
| SA Devane | So… [Sighs] we're so close here, we're so close to the truth with you, that you've told—what I know is that the person you say you met had cocaine, um… I know he met you, because you just told me you met someone by Edison school, he gave you a duffel bag—that's the same story that my guy told. You're telling me the bag was unzipped where you could see inside. But you said the only thing I saw was tissue paper. | | |
| Christolin | Se pa sa, se pa sa sèlman m di non. [U/I] | That's not it, that's not all I | |

23-13672                Opinion of the Court                37

| | | said, alright. [U/I]. | |
|---|---|---|---|
| SA Devane | Correct me! | | |
| Christolin | The top, the top bag la [U/I]. Men, m pat pèsiste al gade andedan l. | The top, the top bag la [U/I]. But, I did not insist on looking inside. | He said, that's what he saw at the top but he didn't go and look at the bottom. |

Cherubin Translation: Pg. 116.

38                    Opinion of the Court                    23-13672

| Participant | Transcript | Certified Translation | SA Philippe Translation |
|---|---|---|---|
| SA Philippe | Banm, banm mande w yon kesyon. Konbyen fwa, moun lan, uh you met up with, ou [U/I] at, at Edison, konbyen fwa ou meet up ak moun sa? | Let me, let me ask you a question. How many times, the person, uh, you met up with, you [U/I] at Edison, how many times did you meet this person? | |
| Christolin | Depi sèl lè a. | Since that time. | |
| SA Philippe | That's the only time? | | |
| Christolin | Yeah | | |
| SA Ramirez | Who did he meet with at, at Edison? | | |
| SA Philippe | | | He said the person he met with at Edison----that gave him the bag, that's the only time he met with him. |

Cherubin Translation: Pg. 120.

23-13672                    Opinion of the Court                    39

| Participant | Transcript | Certified Translation | SA Philippe Translation |
|---|---|---|---|
| SA Philippe | So, nan travay ou te ye? | So, you were at work? | |
| Christolin | Yeah, nan taksi m t ap fè. | Yeah, I was driving the taxi. | |
| SA Philippe | So, he was at work? So, w al cheche l nan taksi? | So, he was at work? So, you went to pick him up in the taxi? | |
| Christolin | Non, li just di m men kote l ye, m jwenn li. M pran bagay la pou li | No, he just told me where he was, I went to meet him. I picked up the thing for him. | |
| SA Philippe | Men, eske, eske ou te nan taksi or…? | But, were, were you in a cab or…? | |
| Christolin | Nan taksi m te ye | I was in the cab | He said he was at work, he met up with the guy. He was in his taxi. |

Cherubin Translation: Pg. 126.

| Participant | Transcript | Certified Translation | SA Philippe Translation |
|---|---|---|---|
| Christolin | Moun lan, [U/I], just li di men kote l pake | The person [U/I], just told me where he was parked | |
| SA Philippe | OK. The person told him where to park and ou just ale bò kote l? | OK. The person told him where to park and you just went to him? | |
| Christolin | Ya. Non, m just ap [U/I], apre sa, li just di m men li. Koulyea, li di men li. Epi, mwen menm tou, m di l m nan yon taksi. | Yeah. No, I just [U/I], after that, he told me that was him. Now, he told me that's him. Then, I told him too, that's me in the taxi. | He told the person he was in taxi, the person told him where to park. And, that's how they [U/I] each other. |
| SA Ramirez | When was this? | | |
| SA Philippe | Kilè? | When? | |
| Christolin | M pa sonje dat la. | I don't remember the date. | He don't remember the date. |
| SA Ramirez | A year ago, six months, three months? | | |
| Christolin | Mhh, m pa ka, m kwè sa gen nenpòt de zan. | Mhh, I can't, I believe that must be about a good two years. | He said almost two years. |
| Christolin | M pa sonje exactly | I don't remember exactly. | He doesn't remember exactly. |
| SA Ramirez | Did he give any money? | | |

|  | The guy…?<br>[U/I] |  |  |
|---|---|---|---|
| SA Philippe | Eske mesye a ba w lajan? | Did the guy give you money? |  |
| Christolin | Non | No |  |
| SA Philippe | Eske ou ba l lajan? | Did you give him money? |  |
| Christolin | Non | No | He didn't give the guy money, the guy didn't give him money. |

Cherubin Translation: Pg. 129-130.

42                          Opinion of the Court                          23-13672

| Participant | Transcript | Certified Translation | SA Philippe Translation |
|---|---|---|---|
| Christolin | How do you say…? M pa konnen. Moun lan gen dwa konn sa l pa fè a, but mwen menm m gen dwa pa konnen si, si… | How do you say…? I don't know. The person may know what he's doing, but me I may not know if, if… | |
| SA Philippe | Ki moun ki konn, konnen sa y ap fè a? M pa konprann sa w di. | Who, who knows what they're doing? I don't understand what you're saying | |
| Christolin | Non, pa ekzanp, OK. Si… | No, for example, OK. If… | |
| SA Philippe | Moun ki rele w pou fè a…? | The person who called you to…? | |
| Christolin | Yeah | | |
| SA Philippe | Mike…? | | |
| Christolin | M pa konnen. Yeah. | I don't know. Yeah. | He said Mike may know what he's doing, but he don't know what Mike is doing |

Cherubin Translation: Pg. 131.